## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PICTURE PATENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 07cv5567 |
| ) | |
| ) | |
| AEROPOSTALE, INC., DICK'S ) | |
| SPORTING GOODS, INC., CHARLOTTE ) | |
| RUSSE, INC., GSI COMMERCE ) | |
| SOLUTIONS, INC., FOGDOG, INC., ) | |
| NATIONAL BASKETBALL ) | |
| ASSOCIATION, INC., NBA ) | |
| PROPERTIES, INC., NBA MEDIA ) | |
| VENTURES, LLC, MAJOR LEAGUE ) | |
| BASEBALL PROPERTIES, INC., MLB ) | |
| ADVANCED MEDIA, L.P., LINENS 'N ) | |
| THINGS, INC., TWEETER HOME ) | |
| ENTERTAINMENT GROUP, INC., ) | |
| TWEETER NEWCO, LLC, TWEETER ) | |
| OPCO, LLC, BUY.COM, INC. ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF PICTURE PATENTS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Picture Patents, LLC ("Picture Patents") respectfully submits this memorandum in opposition to Defendants' Tweeter Newco, LLC and Tweeter Opco, LLC's (collectively, "Defendants") motion to dismiss Plaintiff's Second Amended Complaint against Defendants for lack of personal jurisdiction.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

   I.   Legal Standard for Personal Jurisdiction and Burden of Proof ........................................... 3

   II.  New York Law Provides for Personal Jurisdiction Over Defendants ................................ 4

        A.   This Court Has General Jurisdiction Over the Defendants ..................................... 4

        B.   This Court Has Specific Jurisdiction Over the Defendants ..................................... 7

        C.   The Exercise of Personal Jurisdiction Over Defendants Does Not Violate Due Process ........................................................................................... 14

CONCLUSION ....................................................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

Page

*Aboud v. Rapid Rentals, Inc.*, 97 Civ. 1742, 1998
    U.S. Dist. LEXIS 3507 (S.D.N.Y. Mar. 23, 1998)......................................................1, 4, 5
*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983)............................................7
*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ................................................3
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................16
*Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ....................2, 4, 7, 8. 9
*Eclaire Advisor, Ltd. v. Daewoo Eng'g & Constr. Co., Ltd.*, 375 F. Supp. 2d 257
    (S.D.N.Y. 2005)............................................................................................5, 6, 7
*Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) ..................................15
*General Elec. Capital Corp. v. AVN Air, LLC*, 06 Civ. 4795, 2007 U.S. Dist.
    LEXIS 3230 (S.D.N.Y. Jan. 16, 2007) ........................................................................4, 6
*Ginsberg v. Gov't Prop. Trust, Inc.*, 07 Civ. 365  2007 U.S. Dist. LEXIS 75771
    (S.D.N.Y. Oct. 10, 2007) ...............................................................................................5
*Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000)..................3, 4
*Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)...............................................14
*Obabueki v. IBM Corp.*, 99 Civ. 11262,
    2001 U.S. Dist. LEXIS 11810 (S.D.N.Y. Aug. 14, 2001).........................6, 7, 8, 14, 15, 16
*Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, 00 Civ. 1971,
    2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. Sept. 13, 2000) ...........................................3, 4
*In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328 (S.D.N.Y. 2000)...................................4
*Uglade v. Dyncorp, Inc.*, 98 Civ. 5459,
    2000 U.S. Dist. LEXIS 1745 (S.D.N.Y. Feb. 21, 2000)....................................................7
*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117
    (2d Cir. 1984) ................................................................................................................5
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...................................16

### STATUTES

Page

N.Y. C.P.L.R. §301 ................................................................................................1, 3, 4, 5
N.Y. C.P.L.R. §302 ...........................................................................................1, 3, 7, 14

# INTRODUCTION

This Court has both general and specific personal jurisdiction over Tweeter Newco, LLC and Tweeter Opco, LLC in this action. Defendants' motion to dismiss for lack of personal jurisdiction should therefore be denied.

In their opening brief, Defendants argue that they have "virtually no connections with the State of New York" which would give this Court general jurisdiction over them under N.Y C.P.L.R. § 301. This argument is wholly without merit. In their brief, Defendants fail to mention the fact that they are wholly owned by Schultze Asset Management, LLC ("Schultze"), a New York based investment company having a principal place of business at 3000 Westchester Avenue, Purchase, New York 10577. *See* Affidavit No. 1 of Srilakshmi Ravi ("Ravi Aff. No. 1") ¶ 2, 3 & Ex. A, B. Indeed, the degree of Schultze's control over Defendants is such that Defendants are subject to the general jurisdiction of this Court under N.Y C.P.L.R. § 301 by virtue of Schultze's presence in New York. *See Aboud v. Rapid Rentals, Inc.,* 97 Civ. 1742, 1998 U.S. Dist. LEXIS 3507 at *5 (S.D.N.Y. Mar. 23, 1998).

Defendants' argument that this Court has no specific jurisdiction over them is also without merit. This Court indeed has specific jurisdiction over the Defendants under New York's long arm statute, based upon the Defendants' use and maintenance of an interactive website, www.tweeter.com, which solicits customers in New York and allows them to request and arrange for Tweeter in-home expert consultation services, among other features, within New York. Under New York's long arm statute, a foreign defendant who "transacts any business within the state" is subject to the jurisdiction of the New York courts with respect to the claims arising out of that business activity. N.Y. C.P.L.R. § 302 (emphasis added). This Court has held that a defendant's maintenance of an interactive website which permits the exchange of

information between the defendant and users in New York, as Defendants do here, is commercial activity sufficient to bring the defendant plainly within the reach of New York's long arm statute. *Citigroup, Inc. v. City Holding Co.,* 97 F. Supp. 2d 549, 565-66 (S.D.N.Y. 2000). Interestingly, Defendants completely ignore this critical feature of their website.

The exercise of personal jurisdiction over the Defendants will not violate the due process requirements of the Fourteenth Amendment. Here, Defendants have purposefully availed themselves of the privilege of conducting commercial activity in New York by using and maintaining the www.tweeter.com website. Clearly, these commercial activities of the Defendants are related to the underlying cause of action, as Defendants are being sued for infringement of Picture Patents' U.S. Patent No. 6,278,455 based upon their use and maintenance of the very same www.tweeter.com website. Moreover, this Court's exercise of personal jurisdiction over Defendants is fair and reasonable, particularly in light of the facts that Picture Patents is a New York based entity and has a strong interest in litigating in New York, and Defendants' parent entity and counsel are both located in New York. Also, this case involves a number of other defendants who are already subject to the jurisdiction of this Court and, as the identical patent claims are being asserted against each of those defendants, it is in the interest of judicial efficiency to adjudicate all of these claims before this Court, rather than having Picture Patents bring a parallel suit against Defendants Tweeter Newco, LLC and Tweeter Opco, LLC in another forum.

As no discovery has yet taken place in this case and no evidentiary hearing has been held on the issue of personal jurisdiction, Picture Patents need only make a *prima facie* showing of personal jurisdiction. The Court may rely on Picture Patents' allegations in its Complaint and affidavits submitted by the parties in resolving this issue. The Court must construe these

2

materials in the light most favorable to plaintiff. *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.,* 00 Civ. 1971, 2000 U.S. Dist. LEXIS 13138, at *7-8 (S.D.N.Y. Sept. 13, 2000). Picture Patents' Complaint and supporting affidavits submitted herewith clearly establish a prima facie showing that this Court has personal jurisdiction over Defendants.

As this Court has both general jurisdiction and specific jurisdiction over Defendants in this action, and the Defendants have indeed purposefully availed themselves of the privilege of conducting activities in New York such that they could reasonably expect being subject to suit in this forum, Picture Patents respectfully requests that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction. If the Court were to determine that it lacked sufficient evidence to so rule, Picture Patents requests that the Court allow jurisdictional discovery on the issue of personal jurisdiction and set a schedule which would allow the parties to conduct that discovery so that the issue may be more extensively analyzed and briefed.

**ARGUMENT**

**I.    Legal Standard for Personal Jurisdiction and Burden of Proof**

"Personal jurisdiction in a federal court is determined by looking to the law of the forum state." *Hsin Ten Enter. USA, Inc. v. Clark Enter.,* 138 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (citing *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997)). Here, the Court must look to the law of the State of New York for issues of personal jurisdiction.

Section 301 of the New York C.P.L.R. provides for general jurisdiction over foreign defendants who are present or do business in New York. *See* N.Y. C.P.L.R. § 301. The New York long arm statute is found in Section 302, which provides for specific jurisdiction over a defendant where a cause of action arises from a defendant's contacts in New York, including, for example, defendants' commercial activities in New York. *See* N.Y. C.P.L.R. § 302.

3

A court may exercise personal jurisdiction over a foreign defendant, provided that the maintenance of the suit in New York "does not offend traditional notions of fair play and substantial justice" so as to violate the due process clause of the Fourteenth Amendment. *Hsin Ten*, 138 F. Supp. 2d at 457. The Court's exercise of personal jurisdiction over a defendant will not violate due process where the defendant has certain "minimum contacts" with New York. The due process requirements will generally be satisfied where a defendant has "purposefully availed" itself of the privilege of doing business in New York and could reasonably foresee being sued in New York. *Id.; Citigroup*, 97 F. Supp. 2d at 569.

Where, as here, no discovery has taken place and no evidentiary hearing has been held, a plaintiff can satisfy its burden of establishing that the Court has jurisdiction over the defendants by making factual allegations sufficient to establish a *prima facie* case for the exercise of jurisdiction. *General Elec. Capital Corp. v. AVN Air, LLC,* 06 Civ. 4795, 2007 U.S. Dist. LEXIS 3230 at * 9 (S.D.N.Y. Jan. 16, 2007) (citing *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 334 (S.D.N.Y. 2000)). The Court may rely on the allegations contained in the complaint as well as on affidavits submitted by the parties in making its determination. The Court must draw all inferences and resolve any doubts in favor of the plaintiffs, notwithstanding any contrary representations offered by the defendants. *Id.*; *Student Advantage, Inc.,* 2000 U.S. Dist. LEXIS 13138, at *7-8; *see also Aboud,* 1998 U.S. Dist. LEXIS 3507, at *3.

**II.**     **New York Law Provides for Personal Jurisdiction Over Defendants**

    **A. This Court Has General Jurisdiction Over the Defendants**

        **i.  Defendants Are a "Mere Department" of Their New York Parent And Are Thus Subject to the Jurisdiction of This Court**

Pursuant to N.Y C.P.L.R. § 301, the Court has jurisdiction over a foreign corporation "doing business" in New York if the corporation is "present in New York not occasionally or

casually, but with a fair measure of permanence and continuity." N.Y. C.P.L.R. § 301; *Ginsberg v. Gov't Prop. Trust, Inc.,* 07 Civ. 365 2007 U.S. Dist. LEXIS 75771, at *13 (S.D.N.Y. Oct. 10, 2007).

The Second Circuit has held that a foreign corporate entity will be considered a "mere department" of a parent that is present in New York so as to expose the foreign entity to general personal jurisdiction in New York where the parent's control extends beyond mere ownership of the subsidiary. The courts generally weigh the following four factors in determining whether a foreign subsidiary is a "mere department" of its New York parent so as to confer jurisdiction of the New York courts over the subsidiary: (1) common ownership; (2) financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes with the subsidiary's selection of personnel and fails to observe corporate formalities; and (4) the degree of the parent's control over the subsidiary's marketing and operational policies. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120-122 (2d Cir. 1984). "The overall weighing of the various factors necessitates a balancing process, and not every factor need weigh entirely in the plaintiffs' favor." *Aboud,* 1998 U.S. Dist. LEXIS 3507 at *4. Of these four factors, common ownership is the only factor deemed to be "essential" for the assertion of jurisdiction over a foreign subsidiary. The remaining three factors are "important" to the analysis, but not essential. *Id.* at *9-10. All four of the *Volkswagenwerk* factors are satisfied here, and this Court therefore has general jurisdiction over the Defendants.

Here, the first factor of the *Volkswagenwerk* test, common ownership, is clearly met as Defendants are wholly owned subsidiaries of Schultze, which has a principal place of business in New York. Ravi Aff. No. 1 ¶ 2, 3 & Ex. A, B. *See Eclaire Advisor, Ltd. v. Daewoo Eng'g & Constr. Co., Ltd.,* 375 F. Supp. 2d 257, 263 (S.D.N.Y. 2005) (holding that "the first factor is

clearly met, as DADI is a 100% owned subsidiary of DWEC, with its principal place of business in New York City").

The second factor, financial dependency of the subsidiary on the parent, is also satisfied. Both Tweeter Newco and Tweeter Opco were created in 2007 after Schultze invested $38,000,000 to purchase the assets of Defendants' predecessor, Tweeter Home Entertainment Group, Inc., which was in bankruptcy. Ravi Aff. No. 1 ¶ 4, 5 & Ex. C, D. Schultze later provided an additional $20,000,000 loan to Defendants in September 2007. Ravi Aff. No. 1 ¶ 6 & Ex. E.

The third and fourth *Volkswagenwerk* factors are also met here. Mr. George J. Schultze, Managing Member and Portfolio Manager of Schultze Asset Management, LLC, serves on the Board of Directors of Tweeter Newco and also serves on the creditor committee of Defendants' predecessor entity, Tweeter Home Entertainment Group, Inc. Ravi Aff. No. 1 ¶ 7 & Ex. F. *See Eclaire,* 375 F. Supp. 2d at 264 (holding that the third *Volkswagenwerk* factor was met where parent and subsidiary had common officers and directors). In addition, an August 19, 2007 news article indicates that Schultze terminated eighty employees of Tweeter Newco, LLC by sending letters to workers ranging from the level of vice-president down to entry-level employees. Ravi Aff. No. 1 ¶ 8 & Ex. G. The article mentions that Tweeter Newco's merchandising, marketing, engineering and corporate communications divisions were all affected by these layoffs. *Id.* It is clear that Schultze not only exercises control over the Defendants' selection and termination of executive personnel, but Schultze also controls the selection and termination of the Defendants' staff at all levels and across all departments. Schultze's control over the day-to-day operational policies of the Defendants, such as termination of staff, shows an absence of corporate formality between Schultze and the Defendants. *See id.; Uglade v. Dyncorp, Inc.,* 98 Civ. 5459, 2000 U.S.

6

Dist. LEXIS 1745, at *10 (S.D.N.Y. Feb. 21, 2000) (holding that parent exerting significant control over the selection of subsidiary's executive personnel was sufficient to demonstrate a lack of corporate formality).

As all of the *Volkswagenwerk* factors are satisfied here, it is clear that Defendants, a "department" of their parent Schultze, are subject to this Court's general jurisdiction under N.Y C.P.L.R. § 301 due to Schultze's presence in New York. Defendants' motion to dismiss for lack of personal jurisdiction should therefore be denied on this basis alone.

### B. This Court Has Specific Jurisdiction Over the Defendants

#### i.    Defendants' Maintenance of an Interactive Website Confers Personal Jurisdiction Under New York's Long Arm Statute

The New York long arm statute provides for specific jurisdiction over a foreign defendant where, *inter alia,* the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y C.P.L.R. § 302(a)(1); *Citigroup,* 97 F. Supp. 2d at 564. This "transacting business" prong of the long arm statute confers jurisdiction over "a defendant who purposefully avails itself of the privilege of conducting activities within New York, thus invoking the protections of its laws." *Id.* New York courts look to the totality of the circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *Id.* A single transaction of business is sufficient to give rise to jurisdiction under N.Y C.P.L.R. § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction. *Id.* In showing that the claim arises out of the transaction, "[a]ll that is required is some articulable nexus between the business transacted and the cause of action sued upon." *Obabueki v. IBM Corp.,* 99 Civ. 11262, 2001 U.S. Dist. LEXIS 11810, at *16 (S.D.N.Y. Aug. 14, 2001) (citing *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir. 1983)).

7

In cases involving a defendant's use of the internet, the courts have held that a defendant's maintenance of an <u>interactive website</u> which permits the <u>exchange of information</u> between the defendant and users in New York constitutes <u>sufficient commercial activity</u> to confer jurisdiction of the New York courts over the defendant. *Citigroup*, 97 F. Supp. 2d at 565-66 (emphasis added). In *Citigroup*, the District Court held that defendants' internet activity was sufficient to confer jurisdiction in New York where the defendants maintained a website involving "more than the passive posting of information about [defendant's] loan products and services." *Id.* The Court noted that individuals viewing the defendants' website in New York could apply for loans online as well as print out an application for submission by facsimile, click on a hyper link to chat online with a representative of the defendant company, and could also e-mail the defendant with home loan questions and receive a response from an online representative. All of these factors, in the Court's view, weighed in favor of subjecting the defendants to the jurisdiction of the New York courts. The Court held that "[a]t the very least, the interactivity of the [defendants'] site brings this case within the middle category of internet commercial activity. Moreover the interaction is both significant and unqualifiedly commercial in nature and thus rises to the level of transacting business required under CPLR § 302(a)(1)." *Id.* at 566.

The facts of the present case are analogous to *Citigroup.* Here, as in *Citigroup*, the Defendants maintain an interactive website, namely <u>www.tweeter.com</u>, which permits the exchange of information between the Defendants and users located in New York. The Defendants' website allows users in New York to request Tweeter expert consultation services online, similar to the manner in which users of the defendants' website in the *Citigroup* case could apply for loans online. Also, similar to *Citigroup*, the Tweeter website allows a New York

customer to e-mail the Defendants with questions and receive a response from a Tweeter

representative, as illustrated in the below snapshot from Tweeter's website.  *See* Affidavit No. 2

of Srilakshmi Ravi ("Ravi Aff. No. 2") ¶ 3.



The Tweeter website also allows a New York customer to request a catalog and submit

orders by phone via a toll-free number for shipping anywhere throughout the United States, as

illustrated below, similar to how users of the Defendants' website in *Citigroup* could submit loan

applications by facsimile.  *Id.*





Specifically, an individual in New York can visit the www.tweeter.com website and click on the "Services" tab, which in turn will take them to the http://www.tweeter.com/services/ webpage, shown below.  Ravi Aff. No. 2 ¶ 4.



On this webpage, Tweeter describes its in-home consultation service in which a "Tweeter

Specialist" contacts the New York customer via telephone first and later in person at the

customer's home, and provides consultation services related to the custom design of audio and video electronics systems for the customer's home. Ravi Aff. No. 2 ¶ 5. This webpage includes a hyper link entitled "Free In-Home Consultation" which, when clicked, links the New York customer to http://www.tweeter.com/installation/solution.asp, a webpage entitled "Consultation Information," shown below, in which the customer inputs her contact information to receive the in-home consultation services. Ravi Aff. No. 2 ¶ 6.

Tweeter - Free In-Home Consultation                                                                 Page 1 of 2



http://www.tweeter.com/installation/solution.asp                                                    4/14/2008

The Consultation Information webpage includes a drop-down menu which allows the customer to select the state in which they may be contacted. This drop down menu includes New York as one of the options, indicating that Tweeter actively seeks, through its website, to serve customers in New York. Ravi Aff. No. 2 ¶ 7. Shortly after completion of the requested information on this webpage, the New York customer receives an email from the Installation and Design Team at Tweeter informing her that she will receive a call within three business days from one of Tweeter's Installation and Design service specialists to set up an appointment for a

12

consultation, as shown below.  Ravi Aff. No. 2 ¶ 8 & Ex. A.

Yahoo! Mail - srilumr@yahoo.com                                             Page 1 of 1

**YAHOO!** MAIL
Classic                                                              Print - Close Window

**From:**    gksupersatisfy@twtr.com
**To:**       srilumr@yahoo.com
**Subject:** Tweeter - Free In-Home Consultation
**Date:**     Thu, 27 Mar 2008 13:55:32 -0400

Dear valued customer,

   Thank you for your interest in our Free In-Home Consultation offer. We
know that investing in a home entertainment system is a big step and we
are here to help. We aim to make your experience with us first rate, as
we
deliver entertainment and convenience throughout your home. We'll show
you
what you could do, and you tell us what you'd like to do. We'll take
care
of the rest!

   Within three business days you will be contacted via phone or email by
one of our Installation and Design service specialists to set up an
appointment for a consultation at a time convenient for you.

   If for some reason, you do not hear from someone within 5 business
days,
we'd like to know.  Please email us at gksupersatisfy@twtr.com.

Thank you,
The Installation and Design Team

Tweeter Home Entertainment
40 Pequot Way
Canton MA 02021
1-800-Tweeter

Neither the Tweeter website nor the email message from the Tweeter Installation and

Design Team provide any indication that consultation services are not performed within New

York, nor does the email confirmation sent to the customer specify any errors in her request for

services to be provided in New York.  Ravi Aff. No. 2 ¶ 9 & Ex. A.

Here, the requisite nexus between Defendants' in-state conduct (*i.e.*, commercial activity

conducted in New York through their interactive website) and the underlying cause of action is

also present.  In the Second Amended Complaint, Picture Patents alleges, *inter alia,* that

Defendants are "infringing directly, by inducement, and/or by contributing to the infringement of

the '455 patent by offering, providing, using and operating services through one or more

websites, including but not limited to the www.tweeter.com website, including but not limited to

providing a pictorial interface on said websites that permits access of electronic files." (07 CV

5567, Docket No. 28, ¶37) Clearly, Picture Patents' claims of patent infringement in this case

relate to, and indeed are based upon, the Defendants' use and maintenance of the

www.tweeter.com website. As Defendants' website also facilitates the exchange of information

with customers in New York and the marketing of Defendants' services to New York customers,

Defendants could reasonably have expected to be subject to suit in New York arising from their

activities related to this website. *See Obabueki*, 2001 U.S. Dist. LEXIS, at *16.

Defendants' conduct falls within the reach of New York's long arm statute because

Defendants maintain an interactive website allowing customers in New York, *inter alia*, to

request Tweeter in-home expert consultation services online and have thereby purposefully

availed themselves of the privileges of conducting commercial activity in New York. This Court

thus has jurisdiction over the Defendants in this action under N.Y. C.P.L.R. § 302(a)(1), and

Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

### C. The Exercise of Personal Jurisdiction Over Defendants Does Not Violate Due Process

Finally, this Court's exercise of personal jurisdiction over the Defendants satisfies the

due process requirements of the Fourteenth Amendment. In order to satisfy the due process

requirements, a foreign defendant need only have certain "minimum contacts" with the forum

state such that the maintenance of the suit in that forum "does not offend traditional notions of

fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316

(1945). A court's consideration of minimum contacts generally involves three inquiries:

whether (1) the defendant purposefully directed its activities at the forum state, (2) the claim

arises out of or relates to the defendant's activities within the forum state, and (3) assertion of personal jurisdiction is reasonable and fair. *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1350 (Fed. Cir. 2003). Here, the answer to all three of these inquiries is yes.

The first two factors are clearly met here. Defendants purposefully directed their activities at the forum state and the present claim directly relates to these activities. Specifically, as discussed in greater detail above, Defendants purposefully availed themselves of the privilege of conducting commercial activities in New York by maintaining an interactive website, www.tweeter.com, which encourages and allows customers in New York to request Tweeter in-home consultation services, e-mail questions about that service to Defendants, and submit orders by telephone for shipment anywhere in the United States, among other services. As noted above, Defendants' website specifically includes a drop-down menu which includes New York as one of the states in which a customer may be contacted by a Tweeter representative, indicating that Tweeter will serve customers in New York. Defendants' use and maintenance of the www.tweeter.com website is also directly related to the present cause of action because, as alleged in the Complaint and discussed in detail above, Picture Patents' claims of patent infringement in this case relate to, and in fact are based upon, the Defendants' use and maintenance of the www.tweeter.com website. *See Obabueki,* 2001 U.S. Dist. LEXIS 11810, at *13-19 (holding that defendant had "purposefully availed itself of the privilege of conducting activities in New York" through its maintenance of an interactive website such that it should reasonably anticipate being subject to suit in New York, and that asserting personal jurisdiction over the defendant was reasonable and fair and thus did not violate due process).

This Court's assertion of jurisdiction over Defendants in this action is also reasonable and fair. In determining the reasonableness of jurisdiction, this Court has considered factors such as

(i) the burden that the exercise of jurisdiction will impose on the defendant; (ii) the interests of the forum state in adjudicating the case; (iii) the plaintiff's interest in obtaining convenient and effective relief; and (iv) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. *See Obabueki,* 2001 U.S. Dist. LEXIS 11810, at *18-19; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

Here, the exercise of this Court's jurisdiction in New York will impose very little, if any, burden on Defendants. As explained above, Defendants are wholly owned by and financially dependent upon Schultze, which is already present in New York. In addition, Defendants' counsel of record in this action are present in New York, and have indeed already appeared before this Court at the April 4, 2008 status conference, and they have also signed onto the proposed scheduling order in this case. Moreover, should Defendants wish to send representatives from their Massachusetts facility to attend court hearings and the like, "because of the ease of airline transportation, [they] need not lose significantly more time than if the case were [in Massachusetts]." *World-Wide Volkswagen,* 444 U.S. at 303.

In addition, New York has a strong interest in having this case adjudicated in this Court, because Picture Patents is a New York entity. It is generally well-recognized that a state, here New York, has a strong interest in "providing a forum for its residents." *See id.* at 302 (finding that Minnesota was an interested forum where the action was filed by a Minnesota resident).

Furthermore, Plaintiff Picture Patents' interest in obtaining convenient and effective relief and the judicial system's interest in obtaining the most efficient resolution of this controversy both strongly favor maintaining the present suit against Defendants in this Court. As the Court is aware, the present case includes not only Defendants Tweeter Newco, LLC and

16

Tweeter Opco, LLC, but also a number of additional named defendants, including Aeropostale, Inc., Dick's Sporting Goods, Inc. Charlotte Russe, Inc. GSI Commerce Solutions, Inc., Fogdog, Inc., National Basketball Association, Inc., NBA Properties, Inc., Major League Baseball Properties, Inc., MLB Advanced Media, Inc., and Linens 'n Things, Inc., all of whom have appeared in this case and consented to the jurisdiction of this Court. To dismiss Picture Patents' suit against Defendants Tweeter Newco, LLC and Tweeter Opco, LLC would inconvenience Picture Patents by leaving Picture Patents no choice but to bring a parallel action against Defendants Tweeter Newco, LLC and Tweeter Opco, LLC in another federal court. Picture Patents would then have to incur the costs and inconvenience of litigating the same issues and producing the same witnesses in both actions, before two different judges.

Maintaining this suit in two different forums also would not be in the interest of judicial economy. As the same patents, and indeed the identical patent claims, are being asserted against all defendants in the present action, it is most efficient to have Picture Patents' claims against all of these defendants adjudicated in the same action before this Court. Maintaining the suit against Defendants Tweeter Newco, LLC and Tweeter Opco, LLC in this forum would also avoid the possibility of receiving inconsistent adjudications from two different courts with respect to the patent in suit.

Because Defendants have purposefully availed themselves of the privileges of transacting business in New York, thereby establishing "minimum contacts" with this forum, and the exercise of jurisdiction over the Defendants would not be unreasonable on the present facts, the due process requirements of the Fourteenth Amendment are satisfied. The present suit against Defendants should thus be maintained in this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff Picture Patents, LLC respectfully requests that the

Court deny Defendants Tweeter Newco, LLC and Tweeter Opco, LLC's motion to dismiss the

Second Amended Complaint.

**Dated: April 14, 2008.**

Respectfully submitted,
ALSTON & BIRD LLP


By: ___/s/ Thomas J. Parker_____
Thomas J. Parker (TP 7219)
Robert E. Hanlon (RH 8794)
Janice A. Christensen (JC 8280)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9529 (phone)
(212) 210-9444 (facsimile)
thomas.parker@alston.com