UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

PICTURE PATENTS, LLC,

                    Plaintiff,

         - against -                         07 Civ. 5567 (JGK)

AEROPOSTALE, INC., ET AL.,                   OPINION AND ORDER
                    Defendants,                UNDER SEAL

         - and –

INTERNATIONAL BUSINESS MACHINES
CORPORATION,
         Defendant/Counterclaimant,

         - against –

PICTURE PATENTS, LLC and INTELLINET,
INC.,
         Counterclaim Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

     This Order concerns the ownership of United States Patents
No. 6,278,455 ("the '455 Patent"), No. 5,715,416 ("the '416
Patent"), and No. 6,002,401 ("the '401 Patent"; collectively,
"the '455 Patent Family" or "the Patents"). The plaintiff,
Picture Patents, LLC ("Picture Patents"), sued Aeropostale,
Inc., Dick's Sporting Goods, Inc., Charlotte Russe, Inc., GSI
Commerce Solutions, Inc., the National Basketball Association,
NBA Properties, Inc., NBA Media Ventures, LLC, Major League
Baseball Properties, Inc., and MLB Advanced Media, L.P.
(collectively, "the Infringement Defendants"), along with other
parties not relevant to this Order, for patent infringement. The

Infringement Defendants moved to dismiss Picture Patents' claims for lack of standing, arguing principally that the patents were owned by International Business Machines Corp. ("IBM") rather than Picture Patents. Picture Patents then filed the Fourth Amended Complaint ("FAC"), which added IBM as a defendant and sought declaratory judgment that Picture Patents owned the '455 Patent. IBM responded by bringing seven counterclaims against Picture Patents, including requests for declaratory judgment that IBM owns each of the patents in the '455 Patent Family. IBM subsequently brought in Intellinet, Inc. ("Intellinet") as a counterclaim defendant on the declaratory judgment claims. Picture Patents and IBM cross-moved for partial summary judgment on the claims for declaratory judgment.

### I.

The following facts are undisputed, unless otherwise noted.

### A.

Michelle Baker is the founder, managing member, and only voting member of Picture Patents. (Pl.'s Rule 56.1 Stmt. ¶ 9; IBM's Rule 56.1 Stmt. ¶¶ 199-200.) She is also the founder, president, and only officer of Intellinet, Inc. ("Intellinet"). (Pl.'s Rule 56.1 Stmt. ¶ 8; IBM's Rule 56.1 Stmt. ¶¶ 196-97.)

On November 7, 1990, while a doctoral student at Columbia University, Baker began work as a part-time employee at IBM. (Pl.'s Rule 56.1 Stmt. ¶¶ 11-13; IBM's Rule 56.1 Stmt. ¶ 1.) Baker worked in IBM's Software Performance Analysis Group, which "evaluated existing software code to improve code performance." (Pl.'s Rule 56.1 Stmt. ¶ 18.) The day she began working at IBM, Baker signed an "Agreement Regarding Confidential Information and Intellectual Property" ("the IP Agreement"). (Pl.'s Rule 56.1 Stmt. ¶ 14; IBM's Rule 56.1 Stmt. ¶ 2; Corrected Decl. of Calvin Wingfield ("Wingfield Decl.") Ex. 10.) Paragraph 4 of the IP Agreement stated, in pertinent part:

> 4. I hereby assign to IBM my entire right, title and interest in any idea, invention, design of a useful article (whether the design is ornamental or otherwise), computer program and related documentation, and other work of authorship (all hereinafter called "Developments"), hereafter made or conceived solely or jointly by me, or created wholly or in part by me, whether or not such Developments are patentable, copyrightable or susceptible to other forms of protection, and [sic] the Developments: (a) relate to the actual or anticipated business or research or development of IBM or its subsidiaries, or (b) are suggested by or result from any task assigned to me or work performed by me for or on behalf of IBM or its subsidiaries. . . .
>
> The above provisions concerning assignment of Developments apply only while I am employed by IBM in an executive, managerial, product or technical planning, technical, research, programming or engineering capacity . . . .

(Wingfield Decl. Ex. 10.) Baker understood that the IP Agreement applied regardless of where or when — whether at work or after

hours — she created the intellectual property. (Id. Ex. 96 ("Baker Dep.") at 369:10-24.)[1]

The IP Agreement allowed Baker to designate inventions that were excluded from the scope of the assignment in two ways. First, it provided that Paragraph 4 "[e]xcluded . . . any Developments that [Baker] cannot assign to IBM because of prior agreement with ___ which is effective until ___." (Id. Ex. 10) In these blanks, Baker entered "Columbia University" and "graduation," respectively. (Id.) The IP Agreement also allowed Baker to identify any "Developments not assigned by Paragraph 4 in which [she has] any right, title or interest, and which were previously made or conceived solely or jointly by [her], or written wholly or in part by [her], but neither published nor filed in any patent office." (Id.) Baker wrote in "none." (Id.)

In the summer of 1990, prior to receiving an offer to work at IBM, Baker had "considered the problem of how to make computer systems more accessible by using pictures." (Pl.'s Rule 56.1 Stmt. ¶ 11.) She "devised a solution to this problem" "[w]hile driving to her father's home in South Carolina for the Thanksgiving holiday in 1991." (Id. ¶ 12.) Specifically, Baker conceived "a novel pictorial user interface that utilized data

---

[1] The plaintiff disputes whether Baker understood the IP Agreement to apply to inventions that were not "directly related to the tasks she was hired to perform," but does not claim that the IP Agreement excluded inventions that were created while on vacation or otherwise not at work or that Baker understood it to contain such an exclusion. (Pl.'s Resp. to IBM's Rule 56.1 Stmt. ¶ 23; Hr'g Tr. Dec. 2, 2010 ("Hr'g Tr."), at 36.)

structures to link files to pictures and regions within pictures." (Id.) According to Baker, she "completed conception of the invention" during the Thanksgiving holiday break. (Id. at 6.)

Baker discussed the pictorial user interface ("the PUI" or "the Invention") with various IBM employees over the next year and a half. (Id. ¶¶ 20-23, 27-38; IBM's Rule 56.1 Stmt. ¶¶ 75, 94-108, 119-31, 133-39, 147-48.) She refined the PUI during work hours, using IBM's office equipment, as well as resources including IBM's research library, databases, and confidential documents. (Baker Dep. 218:20-219:21, 227:5-16, 593:12-594:19, 603:20-604:20; Wingfield Decl. Ex. 40, 49, 51-53.) According to Baker, her communications with IBM employees and use of IBM resources were part of an attempt "to negotiate a deal with IBM whereby IBM would assist her in patenting and commercializing her invention." The plaintiff contends that none of the IBM employees with whom she discussed the PUI "contributed to the conception of the invention or its reduction to practice" and that "Ms. Baker's only use of IBM resources relating to her invention was limited to preparing materials for use in presenting and working out a deal with IBM." (Pl.'s Rule 56.1 Stmt. ¶ 20, 28.)

Baker's employment with IBM ended in June 1993. (Pl.'s Rule 56.1 Stmt. ¶ 49.)[2] Baker claims that she communicated to IBM that she believed that she owned the Invention, and that she intended to file a patent application for it. (Id. ¶¶ 50-51.) IBM denies that Baker informed IBM that she intended to file a patent application regarding the Invention. (IBM's Resp. to Pl.'s Rule 56.1 Stmt. ¶ 50.) On June 23, 1993, Baker's manager at IBM wrote a memo, with copies to Baker and others, that stated:

> Baker stated that she assumes IBM is not interested in her invention of "Pictorial User Interface", and is relinquishing all claims on said invention. This memo is to document that her assumptions are wrong and that IBM has not relinquished any claims to said invention or any other inventions and/or copyrightable works made or conceived by her during her employment with IBM.

(Pl.'s Rule 56.1 Stmt. ¶ 52; Decl. of Srilakshmi Ravi ("Ravi Decl.") Ex. 47.)

## B.

After she left IBM, Baker continued to develop the PUI and caused three patent applications to be filed between 1994 and 1999. (Pl.'s Rule 56.1 Stmt. ¶¶ 1, 58; Ravi Decl. Ex. 1, 3, 5.) These patent applications resulted in the issuance of the '455 Patent Family. (Pl.'s Rule 56.1 Stmt. ¶ 1; Ravi Decl. Ex. 2, 4,

---

[2] The parties dispute the circumstances of the end of Baker's employment with IBM. Baker claims that she was "terminated because she was spending too much time meeting with IBM managers about her invention" (Pl.'s Rule 56.1 Stmt. ¶ 49), while IBM claims that Baker "left the employ of IBM based on written mutual agreement" (IBM's Resp. to Pl.'s Rule 56.1 Stmt. ¶ 49.).

6.) At some point, Baker also filed foreign and international patent applications based on the Invention. (IBM's Rule 56.1 Stmt. ¶ 6; Baker Dep. 171:23-176:16.)

On December 4, 2003, Baker signed a document ("the Intellinet Assignment") assigning "the entire right, title and interest" in the Patents to Intellinet. (Ravi Decl. Ex. 10.)

On May 9, 2006, Baker signed another document ("the Picture Patents Assignment") identifying Baker as the assignor and purporting to transfer "the entire right, title and interest" in the Patents to Picture Patents. (Id. Ex. 12.) Intellinet is not mentioned in any way in the Picture Patents Assignment. The Picture Patents Assignment was accompanied by an Assumption of Debt Agreement ("the Debt Agreement") entered into jointly by Picture Patents, Intellinet, and Baker, in which Picture Patents assumed over $50,000 in debt that Baker owed to Intellinet in exchange for her agreement "to assign her interest in [the Inventions] to [Picture Patents] pursuant to the Assignment Agreement dated May 9, 2006." (Id.) The Debt Agreement stated that Intellinet "consents to the assignment of the PROMISSORY NOTES by [Baker] to [Picture Patents] and acknowledges that [Baker] is hereby released from any and all obligations under the PROMISSORY NOTES." (Id.)

II.

Picture Patents filed a patent infringement action against
the Infringement Defendants on June 11, 2007, alleging that each
had infringed the '455 Patent. The Infringement Defendants moved
to dismiss the complaint for lack of standing on the ground that
the '455 Patent was owned by IBM, rather than Picture Patents.

Picture Patents then filed the FAC, which added a claim for
declaratory judgment against IBM as to the ownership of the '455
Patent and as to Baker's sole inventorship of the '455 Patent.
IBM responded to the declaratory judgment claim by arguing,
among other things, that Picture Patents had failed to state a
claim upon which relief could be granted and that it had failed
to provide adequate evidence of ownership. IBM also filed seven
counterclaims, seeking declaratory judgment that it owned all
three of the patents in the '455 Patent Family and any foreign
patents and patent applications corresponding to the Patents or
the patent applications that led to their issuance, as well as
bringing claims for conversion, unjust enrichment, and breach of
contract. IBM subsequently amended its counterclaims to add
Intellinet as a defendant on the claims for declaratory
judgment.

Picture Patents and IBM cross-moved for summary judgment on
their claims for declaratory judgment. Additionally, the
Infringement Defendants renewed their motion to dismiss for lack

of standing, arguing that either IBM owned the Patents, by
virtue of the IP Agreement, or that Intellinet owned them, by
virtue of the Intellinet Assignment.[3]


### III.

The motions at issue in this Order concern two sets of
questions. The first set comprises two contractual matters:
First, did IBM obtain ownership of the Patents by operation of
the IP Agreement, or was the Invention outside its scope and
thus retained by Baker? Second, assuming that Baker validly
owned the Patents that she assigned to Intellinet, did the
Picture Patents Assignment effectively assign Intellinet's
rights to Picture Patents?

If either of these questions is decided against Picture
Patents, then Picture Patents lacks standing to sue the
Infringement Defendants, as Picture Patents conceded at
argument. (Hr'g Tr. Dec. 2, 2010 ("Hr'g Tr.") at 7.) "In general
. . . only the owner of a patent has standing to sue for
infringement of the patent." Imatec, Ltd. v. Apple Computer,
Inc., 81 F. Supp. 2d 471, 481 (S.D.N.Y. 2000); see also Lujan v.
Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("The party
invoking federal jurisdiction bears the burden of establishing

---

[3] No party moved for summary judgment on IBM's counterclaims for conversion,
unjust enrichment, and breach of contract. Those claims are not at issue in
this Opinion.

[standing]."). If that is the case, the Court must dismiss the case for lack of jurisdiction. See Imatec, 81 F. Supp. 2d at 480.

The second set of questions concerns IBM's ability to assert its ownership under the IP Agreement, if the Court concludes that the IP Agreement assigned the Invention to IBM. Picture Patents argues that the New York statute of limitations bars IBM from relying on the IP Agreement to interpose an ownership-based defense against its declaratory judgment claims or to bring counterclaims for declaratory judgment. It also argues that IBM cannot avail itself of its rights under the IP Agreement due to the equitable doctrines of laches and equitable estoppel, as well as due to IBM's purported waiver or mutual modification of the IP Agreement.

The Court will deal with each set of questions in turn.

### A.

The standards that apply to a motion to dismiss for lack of standing are similar to the standards applicable to a motion for summary judgment. In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must

accept the material factual allegations in the complaint as
true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107,
110 (2d Cir. 2004). The Court does not, however, draw all
reasonable inferences in the plaintiff's favor. Id.; see also
Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL
1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where
jurisdictional facts are disputed, the Court has the power and
the obligation to consider matters outside the pleadings, such
as affidavits, documents, and testimony, to determine whether
jurisdiction exists. See Filetech S.A. v. France Telecom S.A.,
157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co.,
791 F.2d 1006, 1011 (2d Cir.1986). In so doing, the Court is
guided by that body of decisional law that has developed under
Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011; see
also S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y.
2009).

In deciding a Rule 56 motion, "the trial court's task . . .
is carefully limited to discerning whether there are genuine
issues of material fact to be tried, not to deciding them. Its
duty, in short, is confined at this point to issue-finding; it
does not extend to issue-resolution." Gallo v. Prudential
Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir.
1994). "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993).

### B.

#### 1.

Picture Patents first argues that the IP Agreement did not apply to the Invention and that Baker therefore owned the Invention and the corresponding Patents until she assigned those rights to Intellinet.

The question of who owns a patent "typically is a question exclusively for state courts." Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d

832, 841 (Fed. Cir. 2009), cert. granted, 131 S. Ct. 502 (2010)
(No. 09-1159) (internal quotation marks omitted). The parties
agree that New York law applies to the IP Agreement. However,
"the question of whether contractual language effects a present
assignment of patent rights, or an agreement to assign rights in
the future, is resolved by Federal Circuit law." Id.

 "The present assignment of a future invention divests the
inventor-assignor of ownership of the invention and
automatically vests ownership of the invention, when invented,
in the assignee." Imatec, 81 F. Supp. 2d at 481; see also
FilmTec Corp. v. Allied-Signal, Inc., 939 F.2d 1568, 1573 (Fed.
Cir. 1991) (where contract grants rights in any future
inventions to assignee, "[o]rdinarily, no further act would be
required once an invention came into being" because "the
transfer of title would occur by operation of law"). Under
Federal Circuit precedent, the words "'do hereby assign'
effect[] a present assignment of . . . future inventions."
Roche, 583 F.3d at 842. The assignee of a present assignment of
future inventions "immediately gain[s] equitable title" to
assigned inventions; "once an invention [comes] into being[,]
the transfer of title [occurs] by operation of law." Id.
(internal quotation marks omitted).

 Paragraph 4 of the IP Agreement reads, in relevant part: "I
hereby assign to IBM my entire right, title and interest in any

13

. . . invention . . . hereafter made or conceived solely or jointly by me, or created wholly or in part by me . . . [if] the [invention]: (a) relate[s] to the actual or anticipated business or research or development of IBM or its subsidiaries, or (b) [is] suggested by or result[s] from any task assigned to me or work performed by me for or on behalf of IBM or its subsidiaries." (Wingfield Decl. Ex. 10.) The words "I hereby assign" indicate a present assignment of a future invention. Roche, 583 F.3d at 842. Therefore, if the Invention fell within the IP Agreement, IBM held title to it from the moment it came into being, id., and Baker had nothing to assign to Intellinet or Picture Patents.

The IP Agreement clearly applies to the Invention and the corresponding Patents. An invention fell within the IP Agreement if it (a) was "made or conceived solely or jointly by" Baker; (b) was made or conceived while she was employed by IBM "in an executive, managerial, product or technical planning, technical, research, programming or engineering capacity"; (c) was not excluded by reason of prior assignment to Columbia University; and (d) was "relate[d] to the actual or anticipated business or research or development of IBM or its subsidiaries" or was "suggested by or result from any task assigned to [Baker] or work performed by [Baker] for or on behalf of IBM or its subsidiaries." (Wingfield Decl. Ex. 10.)

Picture Patents concedes that the first three elements are satisfied. First, it argues at length that Baker "made or conceived" the Invention herself. Second, it acknowledges that Baker was employed by IBM for purposes of the IP Agreement during the Thanksgiving holiday, when she initially conceived of the Invention. (Hr'g Tr. at 36.) Baker herself has testified that she understood the IP Agreement to apply "regardless of when" an invention was conceived (Baker Dep. at 369:19-21), thus including inventions created during a holiday spent away from work. Third, Picture Patents concedes that Columbia University had no claim to the Invention and that Baker's listing of Columbia on the IP Agreement did not preclude her from assigning the Invention to IBM. (Hr'g Tr. at 33-34.)

The fourth element is also plainly satisfied. While Picture Patents argues at great length in its papers that the Invention was not related to Baker's work at IBM, it does not and cannot seriously contest that the Invention "relate[s] to the actual or anticipated business or research or development of IBM." (See Picture Patents' Opp'n to IBM's Mot. for Summ. Jud. ("Picture Patents Opp'n") 23 ("Picture Patents does not dispute that . . . any invention remotely related to computers may somehow directly or indirectly relate to IBM's business.").) But the IP Agreement, by its plain terms, applies to all such inventions, even if they do not relate to Baker's actual assigned work.

15

Accordingly, there is no factual dispute as to whether the IP Agreement applied to the Invention; it plainly did. Therefore, IBM owned the Patents ab initio and Baker had no interest to assign to Intellinet or Picture Patents.[4]

2.

The fact that IBM owned the Patents would be sufficient to deprive Picture Patents of standing. The Infringement Defendants also argue that Picture Patents lacks standing to sue because, assuming that Baker owned the Invention as against IBM, she assigned all interest in the Patents to Intellinet prior to the Picture Patents Assignment and therefore could not assign them to Picture Patents. Picture Patents concedes that the Intellinet assignment was valid, and that Baker herself had no rights in the Patents to transfer to Picture Patents. (Hr'g Tr. at 85-87.) Cf. FilmTec, 939 F.2d at 1572 (where an assignor previously assigned his patent rights, the assignor "had nothing to give to [the second assignee] and his purported assignment to [the

---

[4] Picture Patents argues strenuously that Baker did not understand the IP Agreement to apply to the Invention and that she was the sole inventor of the PUI. Neither of these arguments is relevant. One party's subjective understanding of a contract does not alter its unambiguous terms. See, e.g., W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."). Nor is the question of inventorship material to the operation of the present assignment in the IP Agreement. Indeed, the fact that Baker conceived of the Invention brings it squarely within the IP Agreement.

second assignee] is a nullity"). But Picture Patents argues that the Picture Patents Assignment validly assigned the Patents to Picture Patents nonetheless, because it constituted an assignment by Intellinet of Intellinet's interest in the Patents.

Patent ownership cannot be assigned without a "written instrument documenting the transfer of proprietary rights in the patents." Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1250 (Fed. Cir. 2000); see also 35 U.S.C. § 261. Accordingly, if the Picture Patents Assignment did not transfer Intellinet's rights in writing to Picture Patents, Picture Patents has no rights in the Patents and no standing to sue.

The parties assert that Delaware law applies to the Picture Patents Assignment, because the Debt Agreement that accompanied the Picture Patents Assignment includes a choice of law provision specifying Delaware law as the governing law. (Ravi Decl. Ex. 12.) Under Delaware law, an unambiguous contract will be construed according to its terms. See Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992) ("It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract. Only when there are ambiguities may a court look to collateral circumstances." (internal citations omitted)). Accordingly, if

the Picture Patents Assignment is unambiguous, there is no need to look beyond it to expressions of the parties' intent.

The Picture Patents Assignment unambiguously assigns Baker's rights, rather than Intellinet's rights. The assignment itself makes no mention whatsoever of Intellinet, but rather specifies Baker as the "assignor." (Ravi Decl. Ex. 12.) The accompanying Debt Agreement, too, unmistakably states that Baker is assigning her rights, title, and interest in the Patents, and contains no suggestion whatsoever that Intellinet owns or is transferring any interest in them. Instead, Intellinet's only role in the contract is as a third-party beneficiary agreeing to the assignment of debt owed to it by Baker, and releasing Baker from her obligations on that debt. (Id.) Neither the Debt Agreement nor the Picture Patents Assignment is susceptible of any other reading.

Picture Patents proffered a "clarification" signed by Baker, Intellinet, and Picture Patents, as of October 28, 2009, that states that "Intellinet did assign, transfer, and convey to Picture Patents all of the rights, title and interest in and to the Inventions effective May 9, 2006." (Ravi Decl. Ex. 13.) This clarification, however, does not rescue the assignment. Picture Patents acknowledges that the clarification does not alter the Picture Patents Assignment or independently convey Intellinet's rights to Picture Patents. (Hr'g Tr. at 37.) Instead, Picture

18

Patents argues that it proves the intent of the contracting
parties. However, if a contract is "clear and unambiguous on its
face," the Court cannot "consider parol evidence to interpret it
or search for the parties' intent." Pellaton v. Bank of N.Y.,
592 A.2d 473, 478 (Del. 1991) (internal quotation marks
omitted). Accordingly, the "clarification" cannot contradict the
unambiguous terms of the Picture Patents Assignment, which
assign only the (nonexistent) rights in the Patents that Baker
had subsequent to the Intellinet Assignment.


                                3.

     Because Picture Patents has never owned the Patents, it
lacks standing to sue the Infringement Defendants for patent
infringement. As the Court of Appeals for the Federal Circuit
recently made clear, a plaintiff cannot sue if it cannot
establish ownership of a patent, even if a statute of
limitations would bar the defendant (or some other party) from
suing the plaintiff. See Roche, 583 F.3d at 848-49. As discussed
above, Baker assigned the Invention later embodied in the '455
Patent to IBM in the IP Agreement, and therefore had nothing to
assign to Picture Patents. The statute of limitations cannot
cure this defect. Even if that were not so, the Picture Patents
Assignment would still have been a nullity and Intellinet,
rather than Picture Patents, would be the current owner of the

                                19

Patents. Accordingly, Picture Patents lacks standing to sue for infringement of the '455 Patent, and its claims against the Infringement Defendants must be dismissed for lack of standing. See Imatec, 81 F. Supp. 2d at 481, 483 n.5.

### c.

Having found that Baker assigned the Invention to IBM in the IP Agreement, the question remains whether IBM can rely on the IP Agreement, and for what purposes. Picture Patents argues that IBM cannot avail itself of its ownership rights under the IP Agreement due to (1) the expiration of the statute of limitations, (2) the equitable doctrines of laches and equitable estoppel, and (3) waiver or mutual modification of the IP Agreement. Picture Patents maintains that these defects prevent IBM from either defending against Picture Patents' claim for declaratory judgment on the grounds of IBM's ownership or obtaining a declaratory judgment in its favor.

### 1.

### a.

Under New York law, contract claims are generally subject to a six-year statute of limitations. See N.Y. C.P.L.R. § 213(2); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 76

(2d Cir. 1998).[5] IBM does not dispute, and the Court will assume for the purposes of this motion, that this statute of limitations has expired and that IBM's claim to ownership of the Patents would therefore be barred if the statute of limitations applies. In the posture of this case, however, the statute of limitations does not bar IBM from raising IBM's ownership of the Patents as a defense against Pictures Patents' claims or in counterclaims for declaratory judgment.

The Federal Circuit recently dealt with the applicability of statutes of limitations to defenses and counterclaims in suits concerning patent infringement and ownership in Roche.[6] In that case, Stanford University had sued Roche for infringement of patents assigned to Stanford by a researcher. Roche, 583 F.3d

---

[5] IBM argues that contracts creating an automatic assignment of a property interest are exempt from the six-year statute of limitations and are not subject to any statute of limitations. The sole case that IBM cites for this supposed rule, Yager Pontiac, Inc. v. Fred A. Danker & Sons, Inc., 330 N.Y.S.2d 409 (Sup. 1972), aff'd, 343 N.Y.S.2d 209 (App. Div. 1973), aff'd, 313 N.E.2d 340 (N.Y. 1974), does not support its argument. Yager Pontiac held that a contract granting "a present interest in real property . . . is not governed by the six-year Statute of Limitations." Id. at 415. The operative fact in this holding is clearly that the case concerned a present interest in real property, not that it concerned a contract granting a present interest. Under New York law, claims based on ownership interests in real property are governed by separate statutes of limitations. See, e.g., N.Y. C.P.L.R. § 212(a); N.Y. R.P.A.P.L. § 2001. IBM provides no authority, and the Court is aware of none, for the proposition that the generally applicable six-year statute of limitations for contract actions excludes contracts granting present interests in personal or intangible property.
[6] In addition to its discussion of statute of limitations issues, Roche concerned the construction of the Bayh-Dole Act, 35 U.S.C. §§ 200 et seq. See Roche, 583 F.3d at 844-45. The Supreme Court granted certiorari to consider this portion of the decision in Roche. See 131 S. Ct. 502. A review of the petition for certiorari and the opposition thereto suggests that the Supreme Court's consideration of the case is unlikely to disturb any aspect of Roche that is relevant to the present case, and neither party has suggested that this case should be stayed pending the resolution of Roche.

at 838. Prior to the assignment to Stanford, the researcher had assigned the patents to a company later purchased by Roche; this assignment occurred outside the applicable four-year statute of limitations. Id. at 841-42, 846. Roche asserted its ownership of the patents at issue "as a declaratory judgment counterclaim, an affirmative defense, and a challenge to Stanford's standing to sue for infringement." Id. at 838. As to Roche's declaratory judgment counterclaim and its affirmative defense, the Federal Circuit applied California law to determine whether the relevant statute of limitations applied, and concluded that California law would apply the statute of limitations to bar Roche's declaratory judgment counterclaim but would not apply the statute of limitations to its affirmative defense. Id. at 839-41, 846-48. It also determined that, while Roche could not obtain a judgment of ownership in its favor, Stanford nevertheless lacked standing to sue for patent infringement because it could not carry its burden of establishing ownership, due to the invalidity of the researcher's assignment of the patents to Stanford. Id. at 841-42, 848-49.

Roche thus establishes that state law determines whether statutes of limitations apply to defenses and counterclaims based on patent ownership. See Roche at 839-41, 846-48. Picture Patents argues that Roche is distinguishable as to IBM because Roche was both defending against an infringement claim and

asserting its ownership, whereas the Infringement Defendants and IBM are unrelated entities. Picture Patents argues that because IBM (unlike Roche) is solely defending against a declaratory judgment and is not charged with patent infringement, its defenses and counterclaims for ownership are the equivalent of offensive actions for the purposes of statutes of limitations. However, Picture Patents provides no reason to treat this distinction as one of consequence.

Similarly, Picture Patents argues that Roche spoke only of affirmative defenses, and not other types of defenses; because IBM's claim is in the form of a general denial or a motion to dismiss for failure to state a claim upon which relief may be granted, Picture Patents maintains, it is outside the scope of Roche. As with Picture Patents' previous attempt to distinguish Roche, this reasoning is meritless. Nothing in Roche suggests that one rule governs the pleading of ownership as an affirmative defense to a claim of infringement while another rule governs the pleading of ownership as a defense that the plaintiff failed to state a claim upon which relief can be granted or does not own the patents at issue. Even if such a distinction could be read into Roche, it would be unreasonable to hold that the Court should look to a state's statute of limitations, but not the rules determining when that statute of

limitations should apply, in considering whether a defense may
be brought.


                              b.

     The question, then, is whether New York law allows a party
to assert an otherwise time-barred claim as a defense or
counterclaim. New York law provides for the assertion of an
otherwise time-barred defense or counterclaim if it "arose from
the transactions, occurrences, or series of transactions or
occurrences, upon which a claim asserted in the complaint
depends, . . . to the extent of the demand in the complaint."
N.Y. C.P.L.R. § 203(d); see also Bloomfield v. Bloomfield, 764
N.E.2d 950, 952 (N.Y. 2001) ("It is axiomatic that claims and
defenses that arise out of the same transaction as a claim
asserted in the complaint are not barred by the Statute of
Limitations, even though an independent action by the defendant
might have been time-barred at the time the action was
commenced."). Section 203(d) functions "only as a shield for
recoupment purposes, and does not permit the defendant to obtain
affirmative relief." DeMille v. DeMille, 774 N.Y.S.2d 156, 158
(App. Div. 2004); see also Int'l Fid. Ins. Co. v. Cnty. of
Rockland, 98 F. Supp. 2d 400, 410 n.2 (S.D.N.Y. 2000).

     Picture Patents does not dispute that IBM's defenses based
on its ownership of the Invention and its declaratory judgment

                              24

counterclaims "arose from the same transactions, occurrences, or series of transactions or occurrences." (Hr'g Tr. at 26.) Instead, Picture Patents argues that IBM's defenses and counterclaims are barred because § 203(d) is limited to traditional claims of recoupment. (Picture Patents Reply to IBM's Opp'n to Picture Patents' Mot. for Summ Jud. 1-2.) This argument is drawn from the statement in some cases that "[i]n order to fall within § 203(d), 'the counterclaim must "seek a recovery-back predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought."'" Estate of Mantle v. Rothgeb, 537 F. Supp. 2d 533, 544 (S.D.N.Y. 2008) (quoting First Fid. Bank N.A. N.J. v. Companhia de Navegacao Maritima Netumar, 637 F. Supp. 1182, 1185 (S.D.N.Y. 1986) (quoting SCM Corp. v. Fisher Park Lane Co., 358 N.E.2d 1024, 1027 (N.Y. 1976))). This language, however, comes from cases distinguishing true recoupments from set-offs — that is, cases in which it is disputed whether the putative counterclaim truly arises "from the same transactions, occurrences, or series of transactions or occurrences." See, e.g., Mantle, 537 F. Supp. 2d at 544-46; First Fid., 637 F. Supp. at 1184-85; SCM, 358 N.E.2d at 1027. Picture Patents has not provided any authority for recasting this limitation as a requirement that a defense or counterclaim be limited to recoupment, and the Court has found no cases treating it as

such. In this case, Picture Patents has sought a declaratory judgment as to the ownership of the patent.

This disposes of Picture Patents' argument that IBM cannot oppose Picture Patents' claim for declaratory judgment based on the IP Agreement. As a defense to Picture Patents' claim, IBM's reliance on its otherwise time-barred claim does no more than negative Picture Patents' claim for relief, and thus does not exceed "the extent of the demand in the complaint." N.Y. C.P.L.R. § 203(d). IBM therefore may assert Baker's lack of ownership under the IP Agreement as a defense to Picture Patents' claim for declaratory judgment. As discussed above, IBM's interpretation of the IP Agreement is correct, and leaves no genuine dispute of material fact as to whether Picture Patents owns the '455 Patent. Therefore, IBM is entitled to summary judgment dismissing Picture Patents' claim for declaratory judgment as to the ownership of the '455 Patent.

That Picture Patents cannot obtain a declaratory judgment in its favor, however, does not necessarily mean that IBM can obtain a judgment on its counterclaims for declaratory judgment. As Roche demonstrates, a defendant that has a valid defense against a claim of infringement must still be able to bring a counterclaim under the applicable state law in order to obtain a declaratory judgment as to ownership. There is a plausible argument that a declaratory judgment in IBM's favor would

constitute "affirmative relief" that is beyond the scope of a §
203(d) counterclaim. <u>See</u> <u>DeMille</u>, 774 N.Y.S.2d at 158. The Court
of Appeals for the Second Circuit has held that, at least in
cases where the party seeking a declaratory judgment is the
"aggressor" in a course of litigation, § 203(d) does not permit
use of a time-barred defense to initiate an action for a
declaratory judgment. <u>See</u> <u>118 E. 60th Owners, Inc. v. Bonner</u>
<u>Props., Inc.</u>, 677 F.2d 200, 204 (2d Cir. 1982). However, the
Court of Appeals carefully limited its holding to plaintiffs
that are "attempting to employ [§ 203(d)] in other than a
defensive fashion," <u>id.</u>, leaving open the question of whether
otherwise time-barred declaratory judgments are ever permissible
as counterclaims under § 203(d).

The discussion of the policy concerns underlying § 203(d)
in <u>118 E. 60th Owners</u> — chiefly, "the prevention of stale
litigation and the protection of repose" — strongly suggests
that a declaratory judgment counterclaim should be permitted in
a case such as this. <u>Id.</u> at 203. In <u>118 E. 60th Owners</u>, the
plaintiff had sued on a decade-old contract claim, arguing that
it was entitled to a declaratory judgment that the defendant's
alleged wrongs afforded it a setoff to and a defense against
hypothetical claims that the defendant might one day bring. <u>Id.</u>
at 202. Thus, it was the plaintiff who "haled the defendants
into court and disturbed the equilibrium between the parties";

27

as far as the opinion reveals, the defendant had done nothing to bring the moribund dispute into the judicial system. Id. at 204. In such a situation, plainly, the availability of a declaratory judgment would defeat the purposes of the statute of limitations and encourage stale litigation.

In this case, by contrast, Picture Patents is plainly the "aggressor," and IBM has been haled into court only at Picture Patents' insistence. Picture Patents sued IBM to obtain a declaratory judgment that would aid it in its suit against the Infringement Defendants, waiting to do so until years after the relevant events and the expiration of the applicable statute of limitations. It is thus Picture Patents that seeks "to place a question before a court and then prevent the opposing party from disputing issues lying at the foundation of the claim." 118 E. 60th Owners, 677 F.2d at 203. To bar IBM from asserting a counterclaim to prove ownership where another claimant has already done so "would provide an incentive to delay bringing some claims until a [counterclaim] would be time-barred." Id. at 203.

In this posture, allowing IBM to obtain a declaratory judgment would advance the purposes of New York's statute of limitations. The Court has already held that Picture Patents has no claim to ownership of the Patents, and that IBM obtained title by virtue of the IP Agreement; rejecting IBM's declaratory

judgment counterclaims would needlessly cloud title to the
Patents and invite duplicative litigation should IBM seek to
enforce any of its rights as owner of the Patents. Declaratory
judgment in IBM's favor does not "distur[b] the equilibrium
between the parties," id. at 204, but merely confirms a legal
fact that existed prior to the initiation of the lawsuit.[7] It is
thus within the scope of § 203(d).

Accordingly, IBM's counterclaims for ownership of the '455
Patent Family are not time-barred. As previously discussed, IBM
obtained title to the Invention by operation of the IP
Agreement, and therefore it is entitled to a declaratory
judgment regarding the ownership of the resulting Patents.

IBM's counterclaims include not only the '455 Patent but
also the '416 and '401 Patents and several foreign or
international patents and patent applications. Picture Patents
does not argue that IBM's counterclaims should be limited to the
'455 Patent or that its claims to any other patents go beyond
"the extent of the demand in the complaint." Moreover, the '455
Patent is based on a patent application that was a continuation
of the applications that resulted in the issuance of the '416
and '401 Patents (Ravi Decl. Ex. 6 at 1), hence ownership of the

---

[7] It is important to emphasize that IBM's other counterclaims — for
conversion, unjust enrichment, and breach of contract — are not at issue in
this motion, and that they may be barred under § 203(d) even if IBM's
declaratory judgment counterclaims are permitted.

'455 Patent necessarily entails ownership of the '416 and '401 Patents.

With regard to the foreign and international patents and patent applications, however, there is insufficient evidence in the record to grant summary judgment to IBM at this time. The only description of these patents and patent applications appears to be Baker's deposition testimony. (Baker Dep. 171:23-176:16.) The Court cannot determine from this bare identification of patents that they are within the scope of the Invention assigned in the IP Agreement. Because IBM has failed to proffer facts that establish its entitlement to declaratory judgment regarding the foreign and international patents and patent applications, its motion for summary judgment on that counterclaim is denied with leave to renew.

### 2.

Picture Patents next argues that IBM's counterclaims for a declaratory judgment of ownership are barred by laches or equitable estoppel. Neither of these arguments is meritorious.

Laches is "an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party." Saratoga Cnty. Chamber of Commerce, Inc. v. Pataki, 798 N.E.2d 1047, 1055 (N.Y. 2003). "To establish laches, a party must show: (1) conduct by an offending party giving rise

to the situation complained of, (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant." Cohen v. Krantz, 643 N.Y.S.2d 612, 614 (App. Div. 1996); accord Newbro v. Freed, 409 F. Supp. 2d 386, 399 (S.D.N.Y. 2006), aff'd, No. 06-1722, 2007 WL 642941 (2d Cir. Feb. 27, 2007) (summary order).

Picture Patents has not established that it is entitled to relief based on the doctrine of laches. The delay between Baker's departure from IBM and IBM's filing of a claim for declaratory judgment, without more, is insufficient to require application of laches. See Saratoga Cnty., 798 N.E.2d at 1055 ("The mere lapse of time, without a showing of prejudice, will not sustain a defense of laches.") Picture Patents has shown neither inequitable conduct on IBM's part nor prejudice to its interests. Most importantly, IBM expressed unequivocally to Baker (the founder of both Picture Patents and Intellinet) at the time of her departure that Baker was "wrong" to "assum[e] IBM is not interested in her invention of 'Pictorial User Interface', and is relinquishing all claims on said invention." (Ravi Decl. Ex. 47.) Baker and Picture Patents therefore cannot

31

claim that they lacked "knowledge or notice," Cohen, 643
N.Y.S.2d at 614, that IBM maintained a claim to ownership of the
Invention. Picture Patents argues that IBM was required to do
more to assert or protect its ownership, but provides no
authority for such a requirement. Nor can Picture Patents,
Baker, or Intellinet argue that they began incurring expenses
only after IBM had allowed its claims to grow stale, given that
Baker filed the first patent application based on the Invention
just 15 months after IBM notified Baker of its position. (Ravi
Decl. Ex. 1 at 1.) Any expenses incurred in the pursuit of the
patent applications or the infringement actions are the result
of their own willful decision to proceed in the face of IBM's
clear assertion of its ownership rights, rather than the product
of IBM's neglect or omission.

Similarly, Picture Patents has not made out a claim of
equitable estoppel. "Under New York law, the elements of
equitable estoppel are with respect to the party estopped: (1)
conduct which amounts to a false representation or concealment
of material facts; (2) intention that such conduct will be acted
upon by the other party; and (3) knowledge of the real facts."
In re Vebeliunas, 332 F.3d 85, 93-94 (2d Cir. 2003). Picture
Patents has provided no evidence of "conduct which amounts to a
false representation or concealment of material facts" and has
therefore failed to raise a genuine dispute as to whether IBM

32

should be estopped from claiming ownership. Picture Patents

points to communications between IBM and Baker prior to her

termination that, it argues, gave the impression that it

accepted Baker's claims of ownership. But the record does not

contain any representations by IBM that Baker owned the

Invention, and IBM adequately resolved any ambiguity those

discussions may have created with its unequivocal assertion of

ownership upon Baker's departure.


                              3.

     Picture Patents also argues that IBM waived its ownership

rights under the IP Agreement or that the parties modified that

contract. These arguments fail as well.

     Under New York law, "for conduct to amount to a waiver . .

. , it 'must not otherwise be compatible with the agreement as

written;' rather, 'the conduct of the parties must evidence an

indisputable mutual departure from the written agreement.'"

Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d

Cir. 2003) (quoting Rose v. Spa Realty Assocs., 366 N.E.2d 1279,

1283 (1977) (brackets omitted)). Picture Patents argues that IBM

waived its claim under the IP Agreement in an email in which an

IBM employee explained what could happen if Baker owned the

patent and in subsequent conversations about forming a joint

venture to develop the PUI. (Picture Patents Opp'n to IBM's Mot.

                              33

for Summ. Jud. 22-23.) However, the email in question makes clear that the sender was not sure "what [Baker] actually signed" and so could not state who owned the Invention. (Ravi Decl. Ex. 31.) It also points out: "If your invention belongs to IBM, then IBM decides whether or not to file, and you have no rights." (Id.) Nothing in the record suggests that any of IBM's subsequent communications stated or even assumed that Baker owned the Invention; rather, they are entirely consistent with IBM maintaining ownership of the Invention and contemplating working with Baker to develop it. Thus, none of the conduct alleged by Picture Patents is incompatible with the IP Agreement.

Similarly, conduct that is "wholly consistent with" a contract is insufficient to demonstrate modification of that contract. Dallas Aerospace, 352 F.3d at 783. Accordingly, there is no basis for finding the IP Agreement modified to grant Baker ownership over the Invention.

### D.

The foregoing discussion disposes of all claims in the current motions save one: Picture Patents' motion for summary judgment on its claim for a declaratory judgment that Baker is the sole inventor of the PUI. To establish an actual controversy giving a court jurisdiction to grant declaratory judgment over

34

inventorship, a plaintiff must aver at least that it holds a recognized interest in a patent that could be adversely affected by another claim of inventorship." <u>Fina Oil Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1471 (Fed. Cir. 1997). Recognized interests include an ownership interest, <u>see</u> <u>id.</u>, or "a concrete financial interest in the patent," <u>Chou v. Univ. of Chicago</u>, 254 F.3d 1347, 1359 (Fed. Cir. 2001).

Given the resolution of its other claims, Picture Patents cannot bring this claim. It lacks any ownership interest, as discussed above, and has not identified any other cognizable concrete financial interest in the patent. <u>Cf.</u> <u>Chou</u>, 254 F.3d at 1359 (finding a concrete financial interest where an inventor who had assigned her ownership rights claimed that the assignee was obligated to pay royalties to her as an inventor). Therefore, Picture Patents' claim for a declaratory judgment with respect to inventorship is dismissed.

## CONCLUSION

Picture Patents' motion for summary judgment is **denied**. The Infringement Defendants' motion to dismiss is **granted**. IBM's motion for summary judgment is **granted** except that its claim for declaratory judgment as to the ownership of any foreign or international patents and patent applications is **denied** without

prejudice to renewal. The Fourth Amended Complaint is **dismissed**

**with prejudice**.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **April    , 2011**

                                    _____
                                            **John G. Koeltl**
                                    **United States District Judge**

36

prejudice to renewal. The Fourth Amended Complaint is **dismissed with prejudice**.

SO ORDERED.

Dated:     New York, New York
           April /5, 2011

                              John G. Koeltl
                              United States District Judge